UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY HINDLEMANN, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>MOLINA HEALTHCARE, INC.; JOSEPH M. ZUBRETSKY; and MARK L. KEIM,<br><br>                    Defendants. | Case No. 2:25-cv-09461-SPG-RAO<br><br>**ORDER GRANTING THE PENSION FUND MOTION FOR APPOINTMENT AS LEAD PLAINTIFF [ECF NO. 27] AND DENYING THE RETIREMENT FUND MOTION [ECF NO. 13]** |

Before the Court are the Motions for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel filed by the Irving Firemen's Relief and Retirement Fund (the "Retirement Fund"), *see* (ECF No. 13 (the "Retirement Fund Motion")), and the Automotive Industries Pension Trust Fund (the "Pension Fund"), *see* (ECF No. 27 (the "Pension Fund Motion")).[1]  The Court has read and considered the Motions and concluded

---

[1] Christy S. Joseph, Hanser Ponce Blanco, and Anil and Bindu Wagle also filed Motions for Appointment of Lead Plaintiff, *see* (ECF Nos. 15, 19, 22), but have since withdrawn their motions, *see* (ECF Nos. 32, 33, 35).  The Court therefore DENIES Christy S. Joseph, Hanser Ponce Blanco, and Anil and Bindu Wagle's Motions for Appointment of Lead Plaintiff as moot.

-1-

that the Motions are suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Pension Fund Motion and DENIES the Retirement Fund Motion.

## I.      BACKGROUND

Defendant Molina Healthcare, Inc. (the "Company") provides healthcare services to low-income individuals through Medicaid, Medicare, and state insurance marketplaces. *See* (ECF No. 1 ("Compl.") ¶ 18). On February 5, 2025, the Company issued a press release reporting its 2024 financial results and its 2025 revenue and earnings guidance. *See* (*id.* ¶ 19). The press release projected the Company's "full year adjusted earnings per share in 2025 to be at least $24.50 per share, representing 8% growth over the full year 2024." (*Id.*). On April 23, 2025, the Company issued a press release announcing its financial results for the first quarter of 2025. *See* (*id.* ¶ 23). There, the Company "reaffirmed its full year 2025 earnings guidance with . . . adjusted earnings of at least $24.50 per diluted share." (*Id.* ¶ 23).

On July 7, 2025, the Company issued a press release reporting its "preliminary" financial results for the second quarter of 2025. *See* (*id.* ¶ 26). In the press release, the Company reduced its 2025 adjusted earnings per share guidance from $24.50 to a "range of $21.50 to $22.50 per share." (*Id.*). The Company attributed this reduction to "medical cost pressures in all three lines of business," resulting from a "dislocation between premium rates and medical cost trend which has recently accelerated." (*Id.*). Following this announcement, on July 7, 2025, the Company's stock price fell by 2.9%, closing at $232.61 per share. *See* (*id.* ¶ 27). On July 23, 2025, the Company reported its financial results for the second quarter of 2025. *See* (*id.* ¶ 29). There, the Company further reduced its guidance for adjusted earnings per share "to be no less than $19.00 per diluted share." (*Id.*). The Company also reduced its 2025 net income guidance, as calculated under Generally Accepted Accounting Principles ("GAAP"), from $1.25 billion to $912 million. *See* (*id.* ¶¶ 19, 29).

On October 3, 2025, Plaintiff Jeffrey Hindlemann sued on behalf of himself and a putative class of Molina Healthcare investors. *See* (*id.* ¶ 1). Hindlemann alleges that the Company's financial disclosures for fiscal year 2024 and the first quarter of 2025 were false or materially misleading because the Company failed to disclose material, adverse facts concerning the Company's "medical cost trend assumptions," the fact that the Company "was experiencing a dislocation between premium rates and medical cost trend," and that the Company's short-term growth was "dependent on a lack of utilization of behavioral health, pharmacy, and inpatient and outpatient services." (*Id.* ¶ 25 (internal quotation marks omitted)).

## II.    LEGAL STANDARD

The Private Securities Litigation Reform Act ("PSLRA") imposes early notice requirements on plaintiffs:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—
>
>> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and
>>
>> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

After the plaintiff satisfies the notice requirement, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes a rebuttable presumption that "the most adequate plaintiff":

(aa)    has either filed the complaint or made a motion in response to a notice

under subparagraph (A)(i);

(bb)    in the determination of the court, has the largest financial interest in the

relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of

Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  A competing putative class member may defeat this presumption with evidence "that the presumptively most adequate plaintiff" either "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## III.    DISCUSSION

The Pension Fund and Retirement Fund both seek appointment as lead plaintiff based on their economic exposure to the alleged fraud at issue in this action.  *See* (Pension Fund Motion at 5; Retirement Fund Motion at 6–7).  Because the Pension Fund has presented evidence that it has the greatest financial interest at stake and has made a prima facie showing that it satisfies Rule 23's typicality and adequacy requirements, and no plaintiff opposes the Pension Fund's appointment, the Court appoints the Pension Fund as lead plaintiff.  The Court likewise approves the Pension Fund's selection of the law firm Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel.

### A.    Selection of Lead Plaintiff

In assessing a motion for selection as lead plaintiff, courts follow a "three-step process."  *In re Cavanaugh*, 306 F3d 726, 729–30 (9th Cir. 2002).  First, the court must determine that the plaintiff who filed the action posted a notice that complies with the requirement set out in the PSLRA. *See id.* at 729.  Next, the court must assess the various losses suffered by each investor moving for appointment as lead plaintiff and must select the "presumptively most adequate plaintiff."  *Id.* at 729–30.  Finally, the court must consider whether any plaintiff has presented evidence "to rebut the presumptive lead

plaintiff's showing that it satisfies [Federal Rule of Civil Procedure] 23's typicality and adequacy requirements." *Id.* at 730.

### 1. Notice

To comply with the PSLRA, the first plaintiff to file a claim under the Act must (1) publish notice within 20 days of filing their complaint in (2) "a widely circulated national business-oriented publication or wire service," advising the putative class of (3) "the pendency of the action, the claims asserted therein, and the purported class period," as well as that (4), not later than 60 days after the notice is published, any member of the putative class may move to serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

Plaintiff Jeffrey Hindlemann filed the Complaint on October 3, 2025. *See generally* (Compl.). On the same day, his attorneys filed notice of this action in Business Wire. *See* (ECF No. 13-3, Exhibit A to the Declaration of Brian O'Mara ("Notice")); *see also Stradford v. Chipotle Mexican Grill, Inc.*, No. 8:24-CV-02459-SPG-JDE, 2025 WL 3466736, at *2 (C.D. Cal. Feb. 21, 2025) (Business Wire is "a national, widely circulated, business-oriented wire service[.]"). The notice identified this action by its caption and docket number, specified the purported class period, identified the claims at issue, and notified investors of the deadline to file a motion to serve as lead plaintiff. *See generally* (Notice). The Court thus finds this publication satisfied the PSLRA's notice requirement.

### 2. Presumptively Most Adequate Plaintiff

At the second step of the Court's analysis, the Court must determine the "presumptively most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In assessing whether a movant is the presumptively most adequate plaintiff, courts consider (1) whether a movant "filed the complaint or made a motion in response" to the publication of notice; (2) which movant has "the largest financial interest in the relief sought by the class"; and (3) whether that movant otherwise satisfies "the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Pension Fund and Retirement Fund both moved for appointment as lead plaintiff in response to Hindlemann's publication of notice. Thus, the Court must determine which of the two has the largest

financial interest in relief and whether that movant satisfies Rule 23's typicality and adequacy requirements.[2]

Courts within the Ninth Circuit generally determine which party has the largest financial stake by reference to one of four metrics: "1) number of shares purchased during the class period; 2) net shares purchased during the class period; 3) net funds expended during the class period; and 4) approximate losses from the alleged fraud." *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 995 (N.D. Cal. 1999); *see also Ferreira v. Funko, Inc.*, No. 2:20-CV-02319-VAP-PJWX, 2020 WL 3246328, at *5 (C.D. Cal. June 11, 2020) (same). During the proposed class period, the Pension Fund purchased 2,500 shares and a $50,000 bond for a total cost of $828,151 and lost a total of $333,162.95. *See* (ECF No. 29-3). By contrast, the Retirement Fund only purchased a total of 646 shares during the proposed class period for a total cost of $201,633.40 and only lost a total of $86,716.46. *See* (ECF No. 13-5). Therefore, the Pension Fund has the largest financial stake in this litigation.

Once a court "determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *In re Cavanaugh*, 306 F.3d at 732. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted). To determine whether a plaintiff meets Rule 23's adequacy requirement, courts consider (1) whether the plaintiff and their counsel have "any conflicts of interest with other class members"; and (2) whether

---

[2] "[T]he lead plaintiff process focuses on typicality and adequacy in particular because failure to satisfy [the] numerosity and commonality criteria would preclude certifying a class action at all." *In re Mersho*, 6 F.4th 891, 899 n.1 (9th Cir. 2021) (internal quotation marks, citations, alterations, and ellipses omitted).

the plaintiff and their counsel will "prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Based on its Motion, the Pension Fund has made a prima facie showing of adequacy and typicality. *See In re Mersho*, 6 F.4th at 899. The Pension Fund has submitted evidence that it purchased the Company's securities during the class period, claims that it was adversely affected by Defendants' alleged fraud, and alleges that it suffered damages as a result. *See* (ECF No. 28 at 5). Therefore, the Pension Fund has made a prima facie showing that it suffered a similar injury to other members of the proposed class, based on the same course of conduct that allegedly harmed other members of the proposed class, and it does not seek any unique form of recovery. *See Hanon*, 976 F.2d at 508. Additionally, the Court is not aware of any conflict of interest that would prevent the Pension Fund or its counsel from representing the proposed class. *See Staton*, 327 F.3d at 957. Finally, the Court is satisfied that, as a sophisticated institutional investor, the Pension Fund would vigorously litigate this action. *See id.*; *see also* (ECF No. 28 at 5–6 (asserting that the Pension Fund manages "approximately $2 billion in assets for the benefit of more than 20,000" individuals.)).

Because the Pension Fund has the largest stake in this litigation and has made a prima facie case that it satisfies Rule 23's typicality and adequacy requirements, the Pension Fund is presumptively the most adequate plaintiff to represent the proposed class.

### 3. Evidence in Rebuttal

At the third step of the Court's analysis, the Court must determine whether any other plaintiff has presented evidence to "rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *In re Cavanaugh*, 306 F.3d at 730. Here, no plaintiff opposes the Pension Fund's appointment as lead plaintiff. *See* (ECF No. 37 (Retirement Fund's Notice of Non-Opposition)). Therefore, the Court GRANTS the Pension Fund's Motion to be appointed lead plaintiff.

### B.    Selection of Class Counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(v). The Ninth Circuit recognizes "a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *Cavanaugh*, 306 F.3d at 734 n.14 (citation omitted). Indeed, "[a] court may disturb the lead plaintiff's choice of counsel only if it appears necessary to 'protect the interests of the class.'" *Tanne v. Autobytel*, 226 F.R.D 659, 673 (C.D. Cal. 2005) (quoting 15 U.S.C. § 78u-(a)(3)(B)(iii)(II)(aa)); *see also Cavanaugh*, 306 F.3d at 733 n.11 ("Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class.").

The Pension Fund requests that the Court approve its selection of Robbins Geller as lead counsel. *See* (ECF No. 28 at 6–7). According to the Pension Fund, Robbins Geller has "obtained the largest securities fraud class action recoveries in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits." *See* (ECF No. 28 at 7). The Court also notes that it has previously recognized that "Robbins Geller specializes in securities fraud actions and has handled some of the largest and highest-profile securities cases" and has appointed this law firm in other class action cases. *Stradford*, 2025 WL 3466736, at *4 (internal quotation marks omitted). In light of Robbins Geller's experience in litigating securities class action lawsuits, and the absence of any argument that Robbins Geller cannot adequately serve as lead counsel, the Court GRANTS the Pension Fund Motion to approve the selection of Robbins Geller as lead counsel for the putative class.

## IV.    CONCLUSION

For the reasons stated herein, the Court GRANTS the Pension Fund Motion and DENIES the Retirement Fund Motion.    The Pension Fund is hereby appointed lead plaintiff, and Robbins Geller is appointed lead counsel.


**IT IS SO ORDERED.**


DATED:  January 30, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE